May it please the Court, Jay Utley, on behalf of Wells Fargo. Two fairly straight-forward premises call for reversal of the trial court's order and either dismissal or stay at the litigation below in favor of arbitration. The first of those is that when a party takes assignment of a patent or assignment of claims for infringement, it does so subject to the prior licenses granted by and defenses available against the previous owner. Contrary to that case held that the prior license agreement did not run with the patent and did not limit the obligations or rights of the subsequent owner. The second point is that WMR, the prior owner of the patents in suit, as a provision of the license agreement that it granted to Wells Fargo, the PLA, in the PLA WMR waived its right to sue Wells Fargo for any of Wells Fargo's settlement services, the very services upon which Data Treasury has now brought suit. WMR agreed to arbitrate any dispute over the interpretation or application of that agreement. Although the scope and the intent of that covenant not to sue were undisputed below, over our vigorous argument, the trial court refused to give any meaning to its expressed terms. Simply put, this is an attempt of a patentee to cut off the rights of a licensee. WMR assigned its claims for past infringement, assigned its settlement patents to Data Treasury for the purpose of bringing this suit, a suit that WMR could not bring against Wells Fargo. Data Treasury in turn added WMR's sole owner, William Randle, to its board of directors and two and a half weeks later, Data Treasury, with Randle on its board, sued Wells Fargo claiming that Wells Fargo's settlement services had caused past infringement. Data Treasury, when it brought its suit, brought its suit for damages for the period of time, essentially the period of time that the patents in suit were owned by WMR, and Wells Fargo had been protected by the covenant not to sue. But Data Treasury only possesses under the patents and under the claims for past infringement the exclusionary rights that WMR possessed at the time of the assignment. Data Treasury's rights are encumbered by the same limitations, same defenses that could be raised against WMR, including the affirmative defense of arbitrability. The 007 patent is not here, right? The 007 patent? The patents that you're suing on does not include the 007 patent. That is correct. That's the one that's named in the arbitration agreement. That's the only one named in the arbitration agreement, isn't it? It's the only patent named by number. It says the patent. That's correct. That is correct, but the patent, the arbitration provision, holds within its scope any dispute over the interpretation or application of the PLA as a whole. One of the terms of the PLA is the covenant not to sue. In the covenant not to sue, Data Treasury gave to Wells Fargo the right to practice net settlement services free of any suit for infringement on the settlement patents that have been asserted against Wells Fargo. The point of difficulty, for me at least, in the syllogism that you laid out with respect to the encumbrance theory is the point at which you go from a kind of property theory, for lack of a better term. I feel like I'm back in first year law school between last case and this one. We're talking about contract, basic contract and property principles. But your theory really seems predicated on a property notion. That is to say the encumbrances on the property run with the property when transferred so that the license is binding on any person who purchases the patent. So far, so good. The problem is how about other agreements that may not be characterized as property type encumbrances but rather as simple contractual undertakings. It's not so clear that everything that the two parties to the initial agreement agreed upon falls into the category of an encumbrance. The license, yes. Arbitrability, that seems to be not so obvious. You sort of asserted it as following naturally as part of the encumbrance. But I don't see a lot of support for that proposition in the law. In fact, at one point in your brief you suggest there may not be any cases on that but you assert that that really ought to be the principle that ought to apply. And I wasn't able to find anything that supports that, the extension of this encumbrance notion to arbitrability. Your Honor, the natural extension of it is found in the long history of patent law that a license is an agreement, a contract, its terms and provisions incorporated and embodied as a whole. In this license agreement, part of the rights given to Wells Fargo was a set of rights to arbitrate any dispute over any term or provision in the agreement that came into dispute. The covenant not to sue is one of those. The license grant provision is another. It's our position that the license is this agreement as a whole. Well, but you can't really be saying that it applies to any contractual undertaking that's found in the four corners of the license agreement, are you? I mean, suppose, we can get silly, suppose that one of the undertakings was that the patentee would wash the car, the licensee, once a week. I mean, that wouldn't carry over to anybody that was a transferee of the patent, would it? Not according to our position, Your Honor. So we know that not everything that's within the four corners of the license agreement carries over to a transferee. And then we're faced with the question of what does and what doesn't. So I don't think you can just say, well, it was in the contract, therefore it naturally carries over. Well, Your Honor, part of our argument is yes, that it does. In a contract of this type and with these provisions, these provisions are defenses. They are rights given away, rights waived. And whether under patent law, as you described, where a patentee takes subject to prior licenses granted by and also the legal consequences of the prior acts of the previous license holder. I believe it was the Keystone case out of the Second Circuit where the judge said in 1921, it has long since passed into the textbooks that the assignee of a patent takes the patent subject to the legal consequences of the acts of and the licenses granted by the prior license holder. Now, whether an example as extreme as Your Honors, the washing of a car, would fall within that ambit, I am not so sure. But certainly the waiver of rights under a license granted, whether they be a waiver of the right to sue, the allowance of a practice, or the waiver of the right to a trial by jury, surely travels with the patent. It would even under the basic law of assignment of claims. But here's, and I'm having a similar problem. Perhaps you can help me. If you were faced with a lawsuit on the 007 patent, I doubt we would be here. Because the license agreement runs with the 007 patent. But the patents in suit are three other patents. And what I'm trying to figure out is whether you have to find that those three other patents are related to the 007 patent, or whether you can rely on the Net Settlement Services provision and the license as a way of getting where you want to go. If you understand my question. In other words, because to me the analyses are different. But the only, and it follows up on the property right point that Judge Bryce was making, the licenses of a patent that wasn't even before the district court. The license in question did not even concern a patent, at least facially did not even concern a patent that was before the district court. We are in, for instance, the cardiovascular case that was cited in our briefs. This court, a case affirmed by this court. The court held that a covenant not to sue limits the rights of a patent holder in the same way as a non-exclusive license. The covenant not to sue here, I believe without question, it's not been disputed. It implicates the settlement patents, the patents in suit against Wells Fargo. I thought that was disputed. I'm sorry, Your Honor. It was not disputed below. It was never argued or disputed below that the covenant not to sue was over settlement services and that the patents in suit were patents covering net settlement services. But that's right. The other restrictions in the license of the 007 patent were not necessarily tacked onto those other patents. One would not have to reach the conclusion that they were in order to rule in our favor. That's my question. And why is that? Because the covenant not to sue unquestionably includes the patents in suit. WMR covenanted not to sue Wells Fargo for any practice covered by the patents in suit, then assigned the patents, and immediately through its assignee brought suit. But does the covenant not to sue? I'm sorry, I'm not articulating this better. Does the covenant not to sue and the agreement to arbitrate run with three patents that were not licensed? Your Honor, our position is that the covenant not to sue is, in effect, a license to practice those three patents and any other patents that WMR possessed that covered the subject matter of net settlement services. But why weren't they called out then? They existed at the time of the contract. WMR had represented that it owned a number of patents in addition to the settlement patents, that it had a number of applications pending. What the parties were trying to do was cover in as broad a fashion as possible an activity rather than a set of patents. Again, in the cardiovascular case, the court held that a party needn't delineate patents by number to obtain a license to practice under those patents, that the practice could be identified by activity instead. So what I'm hearing you say is that, in effect, the license agreement that was explicitly related to the 007 patent created implied licenses with respect to the other patents, and that those terms, the covenant not to sue and the agreement to arbitrate, run with those implied licenses. That's what I'm hearing you argue. That's correct, Your Honor. I'm into my rebuttal time. If it's all right, I'll save the time. OK. Mr. Rupp? May it please the Court. Your Honor, it is simply not true that the patent license agreement entered into between WMR and Wells Fargo Services Company, two litigants not before the Eastern District of Texas and not in any way implicated in this litigation, comprised patents other than or even intimated at the licensing of patents other than the 007 patent. I believe the district court's opinion in that regard is comprehensive and well-reasoned. The context of the circumstances at the time tell us that this patent license agreement was intended only to apply to the 007 patent. Well, let's look at the covenant not to sue, because as I understand the appellant's argument here, it is that there are two different sources of scope for this license agreement, one of which is the reference to the 007 and its disclosures and applications and so forth. And I understand that argument. The other is the covenant not to sue, which of course was not featured very much in the trial court proceedings, but has assumed a larger role here. And why isn't it the case that the covenant not to sue does not have a greater breadth than the simple 007 license? There are a number of reasons, Your Honor, starting with one identified by Judge Vogel, at least a concern identified by Judge Vogel, which is that there is simply no precedent cited by Wells Fargo for the concept that a patent license agreement that on its face appears to concern one patent can serve to draft restrictions on entirely separate patents which are licensed, which are not licensed. Well, all right. I understand that argument. But is there a sharper and more definitive answer as to why the covenant not to sue does not apply to the patents in suit here? There are several. In my opinion, Your Honor, the linchpin to this court's decision will lie with the question of whether or not Data Treasury is a successor to WMR. I'm concerned right now just with the scope of this. Let's set aside the downstream events. But just taking this contract on its face, does this contract grant a license with respect to something other than and more greater than 007? And if not, by virtue of the covenant not to sue? And if not, why not? The most it grants with respect to freedom from suit as to other patents not named in the particular patent license agreement is a freedom from suit to practice net settlement activities, which is specifically defined in the patent license agreement itself in conjunction with and alongside the licensed software. And the court may recall from the briefing that the licensed software was to be provided by a company named Sonoran. Sonoran actually provided that clearinghouse software. It was never implemented by Wells Fargo. So Wells Fargo has never engaged in any activities that are in conjunction with the licensed software and is not being sued for any type of activities performed or utilized in conjunction with the licensed software. We're returning back to the next step downstream from that, Your Honor, which is the successorship question. The covenant not to sue as well as the successorship clause. Well, before you get there, so these patents and suits have nothing to do with the language you just quoted to us on the software. They have nothing to do with it. No, Your Honor. In fact, Wells Fargo could have been sued under the 007 patent for activities, assuming that they had conduct that infringed the 007 patent, because Wells Fargo never engaged in licensed activity under the patent license agreement, which is what would have been protected by the covenant not to sue. Now, that's not what this case is about. But that demonstrates the breadth of overreaching that Wells Fargo asked the district court to grant it and now comes before this court also requesting. But even if the covenant not to sue were not expressly limited to actions taken in conjunction with the licensed software, the covenant not to sue could not be inflicted upon Data Treasury because Data Treasury is neither a successor nor a permitted assignment of the PLA, the patent license agreement, of WMR. Instead, what Wells Fargo has attempted to do in order to spit the round peg into the square hole is to change the language, to ask the court to read the term successor as successor in interest. If you were suing under the 007 patent, would you not be bound by the PLA? If we were suing under the 007 patent, we would be bound by the PLA. Excuse me. Well, would you? You'd have a covenant not to sue. You'd have an arbitration clause. And this takes us into the question that Judge Bryson was raising, which is at least with respect to the license itself. Yeah, the license runs with the patent.  to tell us with respect to other incidents of the patent license agreement whether or not those likewise would bind a subsequent taker of the patent. That's the question. So successorship has to do with these ancillary consequences that are being urged here. The problem with the Wells Fargo analysis, Your Honor, is that Wells Fargo, through the use of this standing in the shoes doctrine, wishes for the court to grant it more rights than it was entitled to under the patent license agreement. In fact, the patent license agreement specifically dictated, the parties to that license agreement specifically dictated when and whether certain of the terms or any of the terms would pass on to downstream parties who might take their interest via successorship. First of all, the linchpin to the successorship question lies in Minnesota case law because the parties also contracted in the patent license agreement to have contractual issues determined under the law of the state of Minnesota. That case law, which is unrebutted by Wells Fargo, dictates that one corporation purchasing the assets or receiving assets from another via transfer does not acquire the debts and liabilities of the transferring or selling corporation unless one of four exceptions is present. None of those exceptions were alleged by Wells Fargo and they certainly were not established by Wells Fargo. In addition, Your Honor, the idea that we can conflate the concepts of successorship and assignment are contradictory to well-established precepts of contract law. In this patent license agreement, the parties at times use the term assignment or assignee. They separately use the term successor to describe different circumstances and different entities. It's a basic precept of contract law that where parties select different terms and use them in separate sections, they mean them, they intend them to have different meanings. If we read assignee to be successor and successor to be assignee, as Wells Fargo urges, then that contract precept is not only rendered meaningless, but it also places different terms of the patent license agreement into conflict with one another in a way that cannot be remedied or such that one provision has to be read out of the contract, that being the anti-assignment clause. If the parties meant for successorship and assignment to mean the same thing, then the anti-assignment clause would have no meaning. In addition, Your Honor, the idea that a successor corporation is one that takes, in the meaning of this particular contract, patent license agreement, is one that takes an asset from one corporation while the other corporation continues to exist, continues to operate, continues to carry out business, is contradictory to every case discussing the concept of successorship in the corporate context. Because whether we're looking at Black's Law Dictionary, whether we're looking at district court opinions interpreting the term successor, or whether we're looking at the concept of successorship under Minnesota State law, they all have one common thread, and that is that a successor corporation is one that becomes merged with, amalgamated, consolidated with an earlier corporation and the other corporation no longer exists. That's why the Black's Law Dictionary definition says earlier corporation at the end of the definition. Wells Fargo, in fact, early on in this case, laid out the roadmap for the district court and for this court of interpreting what is a successor corporation when they explained that the Wells Fargo defendants now at bar became the successors to Wells Fargo Services Company, the original contracting party, by having merged with and become consolidated with Wells Fargo Services Company. But when it comes to data treasury, Wells Fargo wants a different definition or a different standard to apply to the question of successorship, and that's why they have worked so hard to attempt to get the court moved from successor to successor in interest. But those are not the same terms. They are different terms, and they have different meanings, and the district court correctly ruled to that effect. This contract has a lot of different features to it, and the argument has, in a sense, a lot of moving parts. But let me go back to a question we were discussing earlier and make sure I understand your position and the authority that you would point us to for this position. If I understand your position correctly, you would say in the following situation, you license a patent, let's say the 007 patent, and you agree in the license agreement that any dispute over the scope of the agreement or any other subject that comes up, a dispute between the parties, will be arbitrated. Those are the only two provisions of the agreement, except that the 007 patent is defined as the 007 and related patents, let's say. All right. So you transfer the patent to a third party, unrelated, let's say, hypothesis, and the third party then sues on a patent other than the 007 patent, but one which is arguably related. Your argument is that the, if I understand it, is that the arbitration clause that the license passes with the patent, the license, whatever rights to the license do pass, but the arbitration clause does not. Correct? I believe that is correct, Your Honor. All right. Now, what's, okay, I mean, you were going to say but. The but is, but the court need not make that, reach that holding in order to resolve the case. Well, I understand, but that need be, among their various choices of ways to try to resolve the case, that one is one which at least deserves consideration, and I'd like to figure out exactly where the parties are on that. What's your best authority for the proposition that in that setting, the arbitration clause does not pass, but the license does? I think that the best support for that argument in the specific context of this case is the case law from the Supreme Court on down pertaining to arbitration agreements and their application to non-signatories, or parties that were not part of the original agreement. That case law, while it's been extended in some circuits to permit non-signatories to be sort of drafted into the arbitration agreements, at its outer fringes, this case would reside at its outer fringes, and that is where you have a non-signatory to the original contract attempting to compel another non-signatory to the original contract into arbitration. That is certainly the furthermost reaches that we can imagine of a departure from the Supreme Court's admonition that arbitration is a matter of contract, and from the general rule that parties not having been signatories to those contracts are not bound by its provisions. I think that if the court were to examine the question of whether or not an extension ought to be made of this standing in the shoes doctrine, such that more than just the license moves or is transported with the assignment, this would not be the case to do it, where you're talking about arbitration agreements and the case law is fairly clear that you have to give due and extra care to the circumstance where you're attempting to obligate a non-signatory to a contract. But I think your opposing counsel would probably say, well, you beg the question when you say that it's something other than the license. Well, he would say, I think, that this is part of the license. I mean, if, for example, the license were a promise not to sue, suppose it were a promise not to sue in the Eastern District of Texas. I mean, that would be essentially a waiver of a venue provision. It doesn't sound very much like a license, but it would be incorporated within the license, presumably would carry with the license, correct? Yes. Right. So he's saying, well, the arbitration is just another way of characterizing the way you're going to go about resolving your disputes, and therefore it runs with the license. And my question to you is, why not? And again, I don't think just the Supreme Court's discussion of the pure contract-related arbitration provisions helps very much. We're talking about something in the at least quasi-property setting, where some things do pass with the agreement and some don't. Which don't? Why not this? I think the arbitration, the fact that it's an arbitration agreement, does make a difference because of the historic importance of the right to a jury trial. Well, but just to follow up, because I had the same question, if you were suing on the 007 patent here, would you be bound to arbitrate or not? No. Why? And that is one part. I see my time is up. No, I'm sorry. I didn't mean to go over either question. The arbitration clause itself is limited to disputes. It's very specific and narrow. And it is limited to disputes arising between WMR and Wells Fargo Services Company. A patent infringement lawsuit filed in the Eastern District of Texas by Data Treasury Corporation against a separate Wells Fargo entity is not a dispute or disagreement arising between WMR and Wells Fargo Services. All right, so it goes back to who the identified parties are. But the limitations on the license, it seems to me there's a difference between what you're doing here as you're suing on other patents and if you were suing on the 007 patent, which is specifically called out in that agreement. And your response is, well, it was between different parties and they never agreed to arbitrate anything. And that comes into play in two places. It comes into play in the successorship, Your Honor, but it also comes into play in that arbitration is a pure creation of contract and the words matter in the contract. Thank you, Your Honor, for your time today. Mr. Arling? Briefly, Your Honors, each provision in the PLA, virtually without exception, names the two parties. And if those provisions do not run as a license with the patent, the patents implicated by that decision, then none of them will run. Mr. Arling, let me ask you the flip side of what I just asked counsel. Let's say that the 007 patent was licensed to Corporation A and the three patents ensued were licensed to Corporation B. Could you assert the covenant not to sue and the duty to arbitrate, could you assert them against Corporation B? You're saying license to? In other words, let's say, like in this case, you've licensed the 007 patent to Data Treasury. So I don't have to. By the way, I'm sorry. I see where the confusion is. No, Data Treasury, or WMR, licensed the 007 patent to Wells Fargo. I'm very sorry. What I'm trying to create is, let's say there's a situation here where the subsequent owners of the patents are different. That's the hypothetical I'm trying to articulate. So your client holds the 007 patent, and some other corporation holds the three patents ensued. Are those, is that patent holder of the three patents ensued bound by the license agreement that was entered into between WMR and Wells Fargo? Yes, Your Honor. Why? Because the covenant not to sue was a license to practice the activities covered by those settlement patents granted by the owner of the settlement patents. In transferring those patents, it transferred limited exclusionary rights. So it encumbers, the PLA encumbers all four patents. That's what you're arguing. That is correct. Thank you. I point the court in my brief time remaining to two cases. The E-Time case is a case where the exceptions of the Fifth Circuit were actually argued. And rather than trying to fit, as Mr. Rupp describes, a square peg into a round hole, the E-Time court said simply, the general principles of contract law governing the assignment of claims subjects the assignee of the claims to the defense of arbitrability every bit as much as the assignor. The other case I would point the court to is the V-Formation case, a case where an assignment, anti-assignment, anti-transfer clause, not like the one here, which permits limited assignments  prohibited the transfer of a covenant not to sue. And yet, at the transfer or assignment of the patents, the court held the covenant not to sue ran with the patents. Because any other rule allows the kind of mischief you see here, the licensing of a licensee, then by mere assignment, detracting from, derogating from, or altogether obliterating the rights of the licensee. Any further questions? Thank you very much. Thank you.